In the Matter of the Compensation of
Kathleen A. Overbey, Claimant.

OVERBEY,
*Petitioner,*

*v.*

KAISER HEALTH PLAN,
*Respondent.*

(WCB 86-05492; CA A42980)

761 P2d 547

Ralph E. Wiser, III, Portland, argued the cause for petitioner. With him on the brief was Kulongoski, Durham, Drummonds & Colombo, Portland.

Craig E. Staples, Portland, argued the cause for respondent. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant seeks review of a Workers' Compensation Board order that her compensation for temporary total disability (TTD) should be determined according to the parties' "intent at the time of hire," *former* OAR 436-60-020(4)(a), because at the time of her injury she was not "regularly employed" and had been employed less than four weeks. Claimant also assigns error to the Board's finding that she was not entitled to penalties and attorney fees. We affirm.

We review *de novo*. In October, 1985, claimant had an interview with Tomlinson, one of employer's supervisors, for an on-call radiology service clerk position. During the interview, claimant told Tomlinson that she was working 24 hours per week for Good Samaritan Hospital, but that, for financial reasons, she needed to work 40 hours per week. Tomlinson told claimant that, as a new employe in the on-call position, she would work 40 hours for two to three weeks during an orientation program but that he could not assure her of any specific number of hours of work thereafter. He told her that, as an on-call employe, she could continue to work for Good Samaritan and refuse work that employer offered to her without jeopardizing her position with employer. Tomlinson and claimant also discussed the availability of part-time employment at other facilities of employer. Claimant believed that she could work a total of 40 hours per week at various employer facilities after she completed the orientation program, although Tomlinson did not promise her such work. Claimant knew that she would have to apply to the supervisor at each facility of employer to be hired at that facility.

In November, 1985, Tomlinson offered claimant the on-call radiology service clerk position. She accepted and resigned from her job at Good Samaritan. Tomlinson became her supervisor.

Claimant worked for five consecutive days during the first week of orientation. On the sixth day, she told employer that she had been injured on the fourth day of her employment. Employer accepted the workers' compensation claim. To determine her TTD, it applied *former* OAR 436-60-020(4)(a), which provided:

"The rate of compensation for workers employed with

unscheduled, irregular or no earnings shall be computed on the wages determined in the following manner:

"(a) Employed on call basis: Use average weekly earnings for past 26 weeks, if available, unless periods of extended gaps exist, then use no less than last 4 weeks of employment to arrive at average. *For workers employed less than 4 weeks use intent at time of hire as confirmed by employer and worker.*" (Emphasis supplied.)

It paid her TTD calculated on a 12-hour week, based on Tomlinson's estimate of the number of hours per week that claimant would work as an on-call employe after the orientation period ended. Claimant objected and contended that her TTD should be calculated based on a 40-hour work week. Employer reevaluated the claim and, on June 9, 1986, paid her TTD based on a re-estimate that she would work 16.15 hours per week, together with an amount to cover the difference for the period during which she had been underpaid.

The referee found:

"In this case claimant was regularly at work five days during the week in which she was injured. Her temporary total disability rate should be based upon her daily wage multiplied by five. To base the wage upon any other form of averages for other employees is not necessary and works to disadvantage claimant and flies in the face of the reality that she was regularly employed five days that week.

"I find that payment to her at a lesser rate was patently unreasonable. A penalty will be assessed.

"It is not necessary for me to reach the argument of intent of the parties as to how much time claimant would work in the on-call position. However, a review of the testimony leads me to conclude that claimant clearly had the impression that she could work 40 hours per week in this capacity. She was not so dissuaded by the employer even though she informed them of her desires."

The referee then ordered that employer pay TTD based on a 40-hour work week from the inception of the claim until closed. The referee also ordered that employer pay attorney fees and a penalty of 25% of the difference between the amounts that employer would have paid on the basis of a 40-hour work week and the amounts actually paid.

The Board reversed the referee's order. It ruled that

*former* OAR 436-60-020(4)(a) was applicable and that employer's method of calculating her compensation was reasonable under the circumstances. It found that the intent of the parties "most closely resembles" that to which employer testified, namely, that it "was to employ claimant first on a 40-hour work week for a limited orientation period, and thereafter on a schedule like that of other on-call employes, i.e., approximately 16 hours per week." It found that the parties intended that claimant's employment would be irregular. It recognized that claimant intended to work as many hours as possible but found that there was no evidence that she made arrangements with employer to work regularly 40 hours per week and that she knew that her hours would be irregular. It did not order that employer pay penalties or attorney fees.

■      Claimant argues that the Board's decision contravenes ORS 656.210(2):

"(a)  For the purposes of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving at the time of the injury:

"(A)  By 3, if the worker was regularly employed not more than three days a week.

"(B)  By 4, if the worker was regularly employed four days a week.

"(C)  By 5, if the worker was regularly employed five days a week.

"(D)  By 6, if the worker was regularly employed six days a week.

"(E)  By 7, if the worker was regularly employed seven days a week.

"* * * * *

"(c)  As used in this subsection, 'regularly employed' means actual employment or availability for such employment. For workers not regularly employed and for workers with no remuneration or whose remuneration is not based solely upon daily or weekly wages, the director, by rule, may prescribe methods for establishing the workers' weekly wage."

She contends that ORS 656.210(2)(a)(C) applies to her, because she was "actually employed" and, therefore, "regularly employed" five days a week at the time of her injury. She argues that *former* OAR 436-60-020(4)(a), adopted pursuant

to ORS 656.210(2)(c), applied only where the worker is not "regularly employed" within the meaning of that section.

We find that, for the purposes of ORS 656.210(2)(a)(C), claimant was not "regularly employed" five days a week. In *Newkirk v. Curry Good Samaritan Center,* 90 Or App 208, 210, 751 P2d 1121 (1988), we found that an on-call employe injured during an orientation period was hired to work "irregular hours." We applied *former* OAR 436-60-020 to determine the claimant's TTD benefits. Here, as in *Newkirk,* the record shows that the parties intended that claimant's working hours would vary according to her availability and employer's needs. Accordingly, the Board did not err in finding that the parties intended that claimant's employment was to be "irregular." Thus, the Board correctly concluded that *former* OAR 436-60-020(4)(a) applied and, because there is no dispute that claimant had been employed for less than four weeks, the parties' intent at the time of hire should govern the number of hours per week used to compute claimant's TTD.[1] We agree with the Board's finding of what the parties intended at the time of hire.

■   Claimant argues that the Board erred in deciding that she was not entitled to penalties and attorney fees for employer's "unreasonable computation of her time loss." ORS 656.262(10) provides:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

Claimant, however, is not entitled to penalties or attorney fees. She does not contend that, if we find that she was not "regularly employed" five days a week, we should compute her TTD based on something other than a 16.15-hour work week.

---

[1] Not all employes who are designated as "on call" employes by their employers have "irregular" employment. In *Saiville v. EBI Companies,* 81 Or App 469, 472, 726 P2d 394, *rev den* 302 Or 461 (1986), we found that the claimant, an on-call employe, was "regularly employed" five days a week. He had worked five of the six days following the time he was hired until he was injured. However, that claimant was not employed during an orientation period at the time of injury, and the employer did not show that the claimant would have worked fewer than five days per week had he remained on the job.

She argues, however, that employer should pay a penalty and attorney fees for the period during which employer paid her at the 12 hour rate, because it was a "guess" and, therefore, unreasonable. We disagree. The record reflects that Tomlinson made that estimate on the basis of his knowledge and experience in scheduling workers in that department for six years. We cannot say that it was unreasonable under the circumstances.

Affirmed.